**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth Ray Marshall,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-18-01624-PHX-SMB<br><br>**ORDER** |

At issue is the Commissioner of Social Security Administration's ("Commissioner") denial of Plaintiff's application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). Plaintiff filed a Complaint seeking judicial review of the decision (Doc. 1), and the Court now considers Plaintiff's Opening Brief (Doc. 19, "Pl. Br."), the Commissioner's Response (Doc. 21, "Def. Br."), Plaintiff's Reply (Doc. 22, "Reply"), and the Administrative Record (Doc. 13, "R."). For the following reasons, the Court will affirm the decision.

**I.     BACKGROUND**

Plaintiff filed his application on November 8, 2016, alleging disability as of May 1, 2016. (R. at 12.) Plaintiff's date last insured was September 30, 2016; thus, the period at issue is May 1, 2016 through September 30, 2016. (*Id.* at 14.) Following denial of the application at the initial and reconsideration levels, a hearing before an administrative law judge ("ALJ") was held on January 29, 2018. (*Id.* at 12, 53–80 [hearing transcript].) Following the hearing, the ALJ issued a decision finding Plaintiff not disabled. (*Id.* at 12–

24, 33–45 [duplicate].) The Appeals Council upheld the decision and it became final. (*Id.* at 1–3.)

Therein, the ALJ found Plaintiff had "severe"[1] impairments of obesity, sleep apnea, cervical degenerative disc disease, and headaches. (*Id.* at 15.) Despite these impairments, the ALJ found:

> [Plaintiff] had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs, balance, stoop, crouch, kneel, and crawl. He can occasionally reach overhead with the bilateral upper extremities. He can tolerate occasional exposure to cold, excessive loud noise, excessive vibration, dangerous machinery with mechanical parts, and unprotected heights.

(*Id.* at 17.) Based on this RFC and testimony from a vocational expert ("VE"), the ALJ found Plaintiff could perform past relevant work as a Construction Project Manager. (*Id.* at 22.) In the alternative, the ALJ found, based on VE testimony and Plaintiff's RFC, age, education, and work experience, that Plaintiff could perform work as a Marker and Furniture Rental Consultant. (*Id.* at 23–24.) Ultimately, the ALJ found Plaintiff was not precluded from all work and therefore not "disabled." (*Id.* at 24.)

## II. LEGAL STANDARD

In reviewing a decision of the Commissioner, the Court only reviews issues raised by the party challenging the decision. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) ("[The Court] will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The Court may affirm, modify, or reverse the decision, with or without remanding the cause for a rehearing. 42 U.S.C. § 405(g). The Court may set aside the decision only when it is not supported by "substantial evidence"

---

[1] An "impairment or combination of impairments" is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).

or is based on legal error. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). "Substantial evidence means more than a mere scintilla, but less than a preponderance. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Id.* at 674–75; *see also Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997) ("[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."). "Yet [the Court] must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Trevizo*, 871 F.3d. at 675. The Court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." *Id.* The Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless if it is "inconsequential to the ultimate nondisability determination," *id.* at 1122, or "'if the [ALJ's] path may reasonably be discerned,' even if the [ALJ] 'explains [his or her] decision with less than ideal clarity,'" *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't of Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (U.S. 2004)).

In determining whether a claimant is "disabled," the ALJ employs a five-step sequential evaluation. 20 C.F.R. § 404.1520(a)(4). In brief, the ALJ determines whether the claimant: (1) is "doing substantial gainful activity"; (2) has a "severe" medically determinable impairment or combination of impairments that has lasted more than 12 months; (3) has an impairment that "meets or equals" an impairment listed in appendix 1 of subpart P of 20 C.F.R. § 404; (4) can perform "past relevant work" based on his or her RFC; and (5) "can make an adjustment to other work" based on his or her RFC, age, education, and work experience. *Id.* The claimant bears the burden of proof at steps one through four until it shifts to the ALJ at step five. *Molina*, 674 F.3d at 1110.

**III.   ANALYSIS**

   **A.   The ALJ Gave Specific And Legitimate Reasons Supported By Substantial Evidence For Assigning "Little Weight" To The Opinions Of Plaintiff's Treating Physicians And Committed No Error In Relying On The Opinion From A Non-Examining State Agency Physician.**

Plaintiff's first assignment of error is that the ALJ improperly rejected opinions from treating physicians, Drs. Boor and Nasser, and instead accorded "substantial weight" to the opinion of a non-examining State agency physician. (Pl. Br. at 14–21.)

Generally, opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight.[2] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has, particularly from objective medical evidence; (4) the consistency of the opinion with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 404.1527(c)(1)–(6); *Trevizo*, 871 F.3d at 675. An ALJ may reject an opinion that is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

---

[2] A treating source's opinion is given "controlling weight" when it is "well-supported" by objective medical evidence and "not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). This is not the case here.

1195 (9th Cir. 2004). Like a medical opinion, a physician's controverted opinion on the ultimate issue of disability (*i.e.*, whether a claimant is "disabled" or "unable to work")– though an administrative finding reserved to the Commissioner–may only be disregarded for reasons that are specific and legitimate. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *see generally* 20 C.F.R. § 404.1527(d)(1).

Here, the ALJ afforded "little weight" to the opinions of Plaintiff's treating primary care physician, Aaron Boor, D.O., and treating pain specialist, Azmi Nasser, D.O. (R. at 20–22.) In his March 2017 opinion (*Id.* at 926), Dr. Boor opined that Plaintiff's chronic conditions, in combination, "certainly result in his total disability." (*Id.*) He noted that Plaintiff took medication and underwent treatment for pain in his neck, spine, and right knee. (*Id.*) He added that Plaintiff's "right knee pain causes instability that results in him sometimes falling with no notice." (*Id.*) He noted that Plaintiff's pain medication causes drowsiness, constipation, dizziness, trouble concentrating, trouble making decisions, and sweating. (*Id.*) In his August 2017 opinion (*Id.* at 927–31, 1767–71 [duplicate]), Dr. Boor opined to various physical limitations, including only one hour of sitting and less than an hour of standing and/or walking in an 8-hour workday. (*Id.* at 929.) He further opined that Plaintiff had to elevate his legs for up to an hour every hour. (*Id.*) He also opined to various lifting, carrying, and manipulative restrictions and that Plaintiff would be absent more than three times a month due to impairments or treatment. (*Id.* at 929–31.)

In his August 2017 opinion (*Id.* at 932–38), Dr. Nasser opined that Plaintiff "will not be capable of gainful employment" and was "permanently disabled." (*Id.* at 932.) He described Plaintiff's spinal impairment, clinical findings thereof, and associated pain and symptoms. (*Id.* at 933–37.) Dr. Nasser described Plaintiff's pain and symptoms as "constant[]" and opined Plaintiff was "incapable of even 'low [work] stress.'" (*Id.* at 936.) Dr. Nasser further opined that Plaintiff had significant reaching, lifting, handling, and fingering limitations. (*Id.* at 937.) He opined that Plaintiff would be absent from work more than three times a month because of his impairments or treatment. (*Id.* at 938.) Lastly, he opined that Plaintiff could never push, pull, kneel, bend, or stoop. (*Id.*)

The ALJ's analysis for rejecting both doctors' opinions is substantially similar and relies upon the same evidence; thus, the Court will address the rejection of the opinions together. In rejecting both doctors' opinions, the ALJ noted that both addressed the ultimate finding of disability, an issue that is not a medical opinion but rather an issue reserved to the Commissioner. (*Id.* at 21.) Moreover, the ALJ found that both doctors' opinions were not supported by the medical evidence of record during the relevant period. (*Id.*) In particular, the ALJ noted that while providers noted tenderness and reduced range of motion in Plaintiff's spine, they made no abnormal findings with respect to his extremities and noted he had a normal gait and station. (*Id.*) Thus, the ALJ found that Dr. Boor's standing/walking limitation and opinion that Plaintiff had to elevate his legs, as well as his manipulative limitations, were not supported by the medical evidence. (*Id.*) Likewise, the ALJ found that Dr. Nasser's manipulative and postural limitations were not supported by the medical evidence and noted that within the time period at issue, there was "no objective evidence of hand tremors." (*Id.* at 21–22.) The ALJ also found that opinions regarding Plaintiff's "attention and concentration, ability to handle stress, and need to miss work" were not supported by the medical evidence because providers consistently noted Plaintiff was "in no acute distress." (*Id.* at 21.) Lastly, the ALJ noted that Plaintiff "consistently denied side effects of medication to his medical providers." (*Id.*)

Having reviewed the medical evidence and treatment notes of Drs. Boor and Nasser between May 1, 2016 and September 30, 2016, the Court finds no reversible error. Plaintiff, however, disputes the ALJ's reliance on the normal findings identified by the ALJ pertaining to his gait, station, and extremities. (Pl. Br. at 17.) While Plaintiff did exhibit tenderness and pain in his spine on examination, as acknowledged by the ALJ, there were no abnormal findings made regarding any other part of his body. Thus, the absence of abnormal findings and presence of normal findings regarding Plaintiff's gait, station, and lower extremities accordingly did not justify the limitations regarding Plaintiff's ability to stand and/or walk or that he had to elevate his legs for up to an hour every hour. Moreover, the absence of abnormal findings and the presence of normal findings pertaining to

Plaintiff's upper extremities likewise did not support limitations regarding his ability to manipulate objects. Thus, as properly found by the ALJ, both doctors' opinions were overly restrictive and while some limitations arguably had support from the record, *e.g.*, lifting and carrying, some did not, which bears on the credibility of the opinions as a whole. Thus, the ALJ's reasons for affording only "little weight" to the opinions were specific, legitimate, and supported by substantial evidence.[3]

Lastly, turning now to the issue of whether the ALJ erred in relying on the opinion of a non-examining State agency physician, the Court, again, finds no error. (See Pl. Br. at 19–21.) The ALJ was free to rely on the opinion of a non-examining physician, the State agency physician, so long as the opinion was "consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Here, the ALJ found that it was supported by the medical evidence of record for the relevant period. (R. at 20.) Contrary to Plaintiff's assertion, *the ALJ*–not the opining physician–is charged with evaluating the "consistency of [an] opinion with the record as a whole." 20 C.F.R. §§ 404.1527(c)(4). Thus, it is immaterial that the State agency physician not have access to later records. Where the ALJ found the opinion not fully supported by the relevant evidence, the ALJ made appropriate accommodations, *e.g.*, restricting Plaintiff from climbing ladders, ropes, and scaffolds due to side effects from his medications. (*Id.* at 20.) Therefore, the ALJ did not err in her evaluation of the medical opinions of record.

---

[3] The Court disagrees that the finding that Plaintiff was in "no acute distress" at the time of his appointments undermines the opinions regarding Plaintiff's attention, concentration, ability to handle stress, and need to miss work. The ALJ fails to construct a logical bridge between this finding and the opinions it purportedly undermines. Moreover, Plaintiff reported adverse side effects from his pain and muscle relaxer medications, including drowsiness, dizziness, and issues concentrating, undermining the ALJ's finding that he "consistently" denied side effects. (R. at 740.) The ALJ even acknowledged some of these side effects elsewhere in the decision and prescribed appropriate limitations to accommodate them. (*Id.* at 20.) However, these errors by the ALJ are harmless because the ALJ provided other specific reasons for rejecting the opinions that are legitimate. *Cf. Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (holding ALJ's reliance on a reason found invalid for rejecting claimant testimony was "harmless error" where ALJ had also relied on reasons found valid).

**B.   The ALJ Gave Specific, Clear, And Convincing Reasons Supported By Substantial Evidence For Discounting Plaintiff's Allegations.**

Plaintiff's second assignment of error is that the ALJ did not provide specific, clear, and convincing reasons supported by substantial evidence for discounting his symptom testimony. (Pl. Br. at 21–27.)

Absent evidence of malingering, an ALJ may only discount a claimant's statements for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina*, 674 F.3d at 1112.  General findings are not sufficient.  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).  Rather, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099. "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112.  For instance, the ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)).  "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment," *Id.* at 1113, or where they suggest that "later claims about the severity of [the] limitations were exaggerated," *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for the symptoms." *Lingenfelter*, 504 F.3d at 1040. "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Lastly, "[a]lthough [a] lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

Here, the ALJ discounted Plaintiff's allegations for a variety of reasons, including a lack of support from objective clinical findings, effectiveness of medication and treatment in alleviating symptoms, and inconsistency with reported activity levels. (R. at 18–20.) Plaintiff disputes the ALJ's discount of his testimony that he was "virtually bedridden," alleging that the ALJ erroneously concluded it was not supported by the medical evidence. (Pl. Br. at 23.) In particular, Plaintiff disputes the ALJ's reliance on medical records from Plaintiff's ear, nose, and throat ("ENT") specialist. (*Id.*) The ALJ had cited to these records in support of the finding that Plaintiff made no complaints of musculoskeletal pain. (R. at 18.) Plaintiff maintains that the absence of such complaints to his ENT doctor does not diminish the severity of his orthopedic condition because the ENT doctor only treated his breathing and sleeping issues, not his pain. (Pl. Br. at 23.) Plaintiff notes that he consistently received pain treatment from his pain specialist to whom he "reported chronic pain despite potent pain medication and invasive procedures." (*Id.* at 23–24.)

The Court finds no error. While it is true that Plaintiff did report pain to his pain specialist, he also reported experiencing 90% and 100% relief of his pain from treatment, as noted by the ALJ. (R. at 19 (citing R. at 405, 407, 425, 1025), 427.) Further noted by the ALJ was that "on several occasions [Plaintiff's] treating provider noted that [Plaintiff] reported that his current regimen worked well to keep pain and symptoms more tolerable."[4] (*Id.* at 19.) Plaintiff also denied side effects to the medications and tolerated them well. (*Id.* at 19, 413.)

Plaintiff, however, maintains that the ALJ was not entitled to rely on the effectiveness of Plaintiff's medication and treatment because the ALJ "made no showing that [he] had *sustained* improvement from medication, nerve blocks, or nerve burning procedures." (Pl. Br. at 24 (emphasis in original).) In arguing that the ALJ was obligated to make such a finding, Plaintiff cites to–and misrepresents–*Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989), a case that is irrelevant here. The issue in *Rodriguez* was whether

---

[4] Additionally, the ALJ cited a plethora of normal clinical findings pertaining to Plaintiff's extremities, including a normal range of motion, no clubbing, no edema, no significant decreased muscle mass, and normal gait and station. (R. at 18 (citing evidence).)

- 9 -

the ALJ proffered "clear and convincing reasons" for rejecting the uncontroverted opinion of a treating physician. *Id.* at 762. There was no issue regarding rejection of claimant testimony. Nevertheless, Plaintiff stated in his brief:

> First, the fact that Marshall may have been "responding to treatment . . . does not provide a clear and convincing reason for disregarding her testimony because '[n]o physician opined that any improvement would allow [her] to return to work.'" *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).

(*Id.* (brackets in original).) The entire quoted portion is thus represented as having come from *Rodriguez* despite the fact that *Rodriguez* did not address claimant testimony–at all. Moreover, it is not clear whose testimony Plaintiff is referring to given that throughout his brief Plaintiff is referred to using the masculine pronoun, yet a feminine pronoun is used here. Plaintiff's attorney is reminded of the duty to ensure the accuracy of representations of both law and fact made to the Court. Ultimately, *Rodriguez* is inapposite here because the issue here is whether the ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony, not for rejecting an uncontroverted opinion of a treating physician.

Turning now to the merits of Plaintiff's argument, the Court finds no error by the ALJ. In evaluating the "intensity and persistence" of a claimant's symptoms, the ALJ may consider "what medications, treatments, or other methods [the claimant] use[s] to alleviate them." 20 C.F.R. § 404.1529(c)(3). Thus, the fact that Plaintiff reported 90-100% relief from treatment and that his medication regimen made his pain tolerable was a clear and convincing reason to discount his testimony because it showed: (1) that treatment was capable of alleviating his symptoms–entirely, in some cases–and (2) an inconsistency between his allegation of "constant," disabling pain noted by the ALJ. (R. at 18.) Both of these, singly and in combination, are sufficient to discount Plaintiff's allegations.

Plaintiff, however, disputes the effectiveness of his medications and treatment, noting that "he reported to several providers that he had difficulty getting out of bed because of pain despite treatment." (Pl. Br. at 24 (citing R. at 646, 740, 1113, 1166).) The

first cited record is a psychiatric treatment note which states that Plaintiff reported spending "a lot of time in bed both in the day and well as [sic] nighttime." (R. at 646.) Interestingly, it also states that Plaintiff reported being "[c]urrently self employed, commercial sound, etc.," despite his alleged disability date of May 1, 2016, just a few months before this appointment on October 4, 2016.[5] (*Id.*) The next record is a treatment note from Plaintiff's primary care provider and states that he has "trouble getting out of bed in the morning due to pain, depression, energy level and side effects from [medication]." (*Id.* at 740.) The last two records are psychiatric treatment notes that state Plaintiff was "bedridden much of [the] time" and that "it is hard for him to get out of bed due to his chronic pain issues." (*Id.* at 1113, 1166.)

        The Court is not persuaded by this evidence. Despite these reports of being "bedridden" to due pain, Plaintiff had reported to a psychiatric provider that "he feels his depression has worsened significantly recently, as he spends 'most of [his] days in bed.'" (*Id.* at 1132.) But he "also indicated that his pain is currently 'pretty well controlled' through his medications and ablation procedures, although his sleep has been disrupted." (*Id.*) Following a medication adjustment for his depression, Plaintiff reported that he felt like "the fog is lifted" and he was "no longer anchored" to his bed. (*Id.* at 1091.) He further reported that "his depression has eased enough to allow him to 'get out of bed, go places and do things that [he] enjoy[s].'" (*Id.*) He stated, "'I am in the pool swimming laps again and went with my son to a scuba diving shop. We are planning a trip together and I am not as withdrawn from other people.'" (*Id.*) Thus, substantial evidence shows that Plaintiff's pain was well-controlled, as evident by his own self-reports, and that his depression–not his pain–was the reason he was "anchored" to his bed.[6] The ALJ's findings and conclusions are therefore clear and convincing reasons for discounting Plaintiff's allegations and

---

[5] Another record from August 25, 2016 similarly notes Plaintiff's reports of self-employment at the time. (R. at 625.)

[6] Plaintiff does not dispute the ALJ's findings regarding his mental impairments and explicitly deems opinions regarding his mental impairments "irrelevant" to his appeal. (Pl. Br. at 9 n.7.)

supported by substantial evidence.

Additionally, Plaintiff disputes the ALJ's finding that his symptom testimony was inconsistent with his activities. (Pl. Br. at 25.) In particular, the ALJ noted that Plaintiff "reported that he enjoyed playing music when possible, target shooting, and fishing"; was "involved with his church music program"; and "attended a concert" and "group therapy on a regular basis." (R. at 19.) The ALJ found these activities "inconsistent with [his] allegation that [he] was near bed ridden." (*Id.*) Plaintiff maintains that the ALJ could not rely on these activities to discredit his testimony because the ALJ did not find that "a substantial part of a typical day was spent engaged in activities inconsistent with disabling limitations." (Pl. Br. at 25.)

The Court finds no error. Indeed, the Court of Appeals has held that "if a claimant 'is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999), adding emphasis and brackets). More recently, however, the Court of Appeals upheld an ALJ's discount of claimant testimony where the claimant engaged in activities that suggested that his "later claims about the severity of his limitations were exaggerated," even though the activities "did not suggest [he] could return to his old job." *Valentine*, 574 F.3d at 693. Thus, under *Valentine*, Plaintiff's testimony was validly discounted because his allegations of constant, disabling pain are undermined by engagement in the activities noted by the ALJ. *Id.*; *see Molina*, 674 F.3d at 1113. Additionally, the Court notes Plaintiff's report of being "in the pool swimming laps again" following adjustment of his depression medication. (R. at 1091.) Therefore, the ALJ's finding that Plaintiff's activities are not consistent with his testimony is a clear and convincing reason to discount his allegations and is supported by substantial evidence in the record.

Lastly, Plaintiff disputes the ALJ's interpretation of a record which she found

indicated that "he had to close his business due to financial difficulties." (Pl. Br. at 26, R. at 19 (citing R. at 678).) The record at issue states, "Reports past 5 yrs. has had difficulty and had to close business, applying for disability, doesn't have place to live/living with parents, financial stress, needs to find place." (R. at 678.) However, it does not elaborate on the nature of the "difficulty" and its relation to the closing of Plaintiff's business. At the hearing, the ALJ attempted to resolve this ambiguity by inquiring whether "[f]inancial difficulties and poor business [had] any bearing on [his] decision to close [his] business." (*Id.* at 70.) Plaintiff responded that he closed the business because of his "illness" and "inability to work," and that prior to being unable to work he "[a]ctually made pretty good money." (*Id.*) While the Court ordinarily defers to the ALJ's interpretation of ambiguous evidence, it cannot defer here because the record itself does not support the ALJ's conclusion and the ALJ cites no evidence directly contradicting Plaintiff's otherwise credible explanation for the closing of his business. Thus, this finding was not a valid reason to discount Plaintiff's allegations concerning the severity of his impairments. However, the error here is harmless because the ALJ proffered other reasons the Court finds valid and supported by substantial evidence. *Bray*, 554 F.3d at 1227 (holding ALJ's reliance on a reason found invalid for rejecting claimant testimony was "harmless error" where ALJ had also relied on reasons found valid).

**IT IS THEREFORE ORDERED** affirming the decision of the Commissioner.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 15th day of May, 2020.

Honorable Susan M. Brnovich
United States District Judge